UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:   Tron Cody Barrett and Lakesha Mitchell Barrett )   Bankruptcy Case No.: 25-31956-BFK

)

Debtors.   )   Chapter 13

)

Progressive Universal Insurance Co
Subrogee of Steven Bowles

Plaintiff,

Lead
Adversary Proceeding No.: 26-03016-BFK

v.

Thomas Tyree Adkins, Jr.

Consolidated with
Adversary Proceeding No.: 26-03017-BFK

Defendant / Cross-Claim
and Third-Party Plaintiff,

and

J.M.B. Trucking LLC (Inactive Virginia entity
automatically cancelled on June 30, 2025 that was
wholly owned and/or operated by the Debtors)

Defendant / Cross-Claim
Defendant,

and

Tron Cody Barrett

Third-Party Defendant,

and

Lakesha Mitchell Barrett

Third-Party Defendant

Counsel for Thomas Tyree Adkins, Jr. (Removing Party)
Brett Alexander Zwerdling, VBN 39569
Brett Alexander Zwerdling, PLLC
1702 Treboy Avenue
Richmond, VA  23226
(804) 564-4593 Fax (804) 355-1597
brett@icansleepatnight.com

### MEMORANDUM OF LAW OF THOMAS TYREE ADKINS, JR. IN SUPPORT OF SUBJECT-MATTER JURISDICTION AND IN RESPONSE TO ORDER TO SHOW CAUSE

Thomas Tyree Adkins, Jr. ("Adkins"), the removing party, by counsel, submits this Memorandum of Law in response to the Court's Order to Show Cause Why Adversary Proceeding Should Not Be Remanded to State Court and Continuing Pre-Trial Conference. The Court directed briefing on: (i) why the removed subrogation action and cross-claim should not be remanded; and (ii) why Adkins's Third-Party Complaint against the Debtors, Tron Cody Barrett and Lakesha Mitchell Barrett, is not stayed by 11 U.S.C. § 362(a).

Adkins respectfully submits that the Court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 1452 because the removed controversy is at minimum "related to" the Debtors' Chapter 13 case and because material portions of the dispute implicate core bankruptcy matters, including claim allowance, plan administration, dischargeability, and the treatment of asserted debts in the Debtors' bankruptcy case. Adkins also acknowledges that the Third-Party Complaint, to the extent it seeks affirmative prepetition monetary relief against the Debtors, implicates the automatic stay. That stay issue, however, is not a subject-matter-jurisdiction defect and does not require wholesale remand. The appropriate remedy is for the Court to retain jurisdiction and enter a procedural order: (a) treating the Third-Party Complaint as a supplement to or informal assertion of Adkins' proof of claim; (b) requiring amendment into a proper claim-allowance, stay-relief, or dischargeability pleading; (c) granting limited stay relief for liquidation only; or (d) staying prosecution against the Debtors while retaining the related non-debtor components to avoid inconsistent rulings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This adversary proceeding was removed from the Henrico County General District Court on April 23, 2026. The removed case includes a subrogation claim by Progressive Universal Insurance Co. against non-debtor defendant Adkins and J.M.B. Trucking, LLC; a cross-claim by Adkins against J.M.B. Trucking; and a Third-Party Complaint by Adkins against the Debtors.

Adkins' Answer, Crossclaim, and Third-Party Complaint materially change the jurisdictional analysis from a simple two-party state-law collection action. Adkins alleges that Progressive's claim, if established against him, is barred, limited, reduced, or subject to allocation, indemnity, contribution, setoff, or other relief because of the acts and omissions of J.M.B. Trucking and the Debtors. Adkins further alleges that J.M.B. Trucking was owned, operated, or controlled by the Debtors; that Adkins continued driving commercial vehicles based on representations that the vehicles were insured; that the vehicles were not insured; and that J.M.B. was used as a shell, conduit, sham, or mere instrumentality to avoid personal responsibility.

The Third-Party Complaint asserts direct and derivative theories, including fraud, constructive fraud, false pretenses, material misrepresentation, indemnity, contribution, veil piercing, alter ego, and related relief. It also seeks determinations that affect the bankruptcy case, including the allowance and treatment of Adkins' claim, potential priority issues, and nondischargeability under 11 U.S.C. § 523.

## II. LEGAL STANDARD

Section 1452(a) permits removal of any claim or cause of action to the district court for the district where the civil action is pending if the district court has jurisdiction under 28 U.S.C. § 1334. Section 1334 grants jurisdiction over civil proceedings "arising under" title 11, "arising

3

in" a case under title 11, or "related to" a case under title 11. In the Eastern District of Virginia, bankruptcy matters referred under 28 U.S.C. § 157 may be heard by the Bankruptcy Court. Bank of Am., N.A. v. Brennan Title Co. (In re Donoho), 402 B.R. 687 (Bankr. E.D. Va. 2009).

The Fourth Circuit applies a broad "conceivable effect" test for related-to jurisdiction. A proceeding is related to a bankruptcy case if its outcome could conceivably affect the estate or the administration of the bankruptcy case. Bestwall LLC v. Official Comm. of Asbestos Claimants, 71 F.4th 168 (4th Cir. 2023); A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir. 1986); Valley Historic Ltd. P'ship v. Bank of N.Y., 486 F.3d 831 (4th Cir. 2007); In re Celotex Corp., 124 F.3d 619 (4th Cir. 1997). The test does not require certainty or likelihood of estate impact; a conceivable effect is sufficient.

Whether a claim is core or non-core is distinct from whether subject-matter jurisdiction exists. Core proceedings include matters concerning administration of the estate, allowance or disallowance of claims, counterclaims by the estate, orders affecting liquidation of estate assets, determinations of dischargeability, and objections to discharge. 28 U.S.C. § 157(b)(2)(A), (B), (C), (I), (J), and (O). Non-core related proceedings may still be heard by the Bankruptcy Court subject to the limitations of 28 U.S.C. § 157(c).

### III. ARGUMENT

**A. The Court Has Related-To Jurisdiction Because the Removed Dispute Could Conceivably Affect the Debtors' Liabilities, Claims Allowance, Plan Treatment, and Dischargeability.**

This proceeding is not merely a subrogation claim between Progressive and Adkins. It includes allegations that J.M.B. Trucking was owned, operated, or controlled by the Debtors; that J.M.B. was used as a shell or alter ego; that the Debtors failed to maintain insurance on vehicles

used in the business; that Adkins relied on representations concerning insurance; and that Adkins may hold direct or derivative claims against the Debtors for indemnity, contribution, fraud, unpaid compensation, and nondischargeability.

Under the Fourth Circuit's broad conceivable-effect standard, these allegations support related-to jurisdiction. The outcome of the removed action may determine whether Adkins holds an allowed claim against the Debtors, the amount and nature of that claim, whether the claim is entitled to priority or particular plan treatment, whether the Debtors' schedules and claims treatment must be corrected, and whether the resulting debt is dischargeable.

The jurisdictional connection is especially strong because the same facts that determine liability in the removed action also determine bankruptcy-specific matters: claim allowance, claim amount, treatment under the confirmed Chapter 13 plan, and dischargeability. Therefore, even if Progressive's original subrogation action and Adkins' cross-claim are non-core, they are sufficiently intertwined with core bankruptcy issues to support related-to jurisdiction.

**B. The Subrogation Action and Cross-Claim Should Not Be Remanded at This Stage Because They Supply the Predicate Liability Determinations for Adkins' Bankruptcy Claims.**

The Subrogation Action supplies the predicate liability determination for Adkins' claims against J.M.B. Trucking and the Debtors. If Adkins is found liable to Progressive, that liability may become the measure of Adkins' indemnity, contribution, fraud, or alter-ego claim against J.M.B. and the Debtors. If Adkins is found not liable, the derivative claim may be narrowed or eliminated. Either result could directly affect the claims register, plan administration, and dischargeability issues in the main bankruptcy case.

5

The Cross-Claim against J.M.B. is likewise not a freestanding commercial dispute unrelated to the bankruptcy case. It is the factual and legal bridge between the non-debtor subrogation claim and the Debtors' bankruptcy estate. Adkins alleges that J.M.B. was controlled by the Debtors, failed to maintain insurance, and functioned as an alter ego or sham. Those allegations determine whether Adkins has a claim against the Debtors and whether that claim should be allowed, treated, or declared nondischargeable. Remand of those components would risk inconsistent findings on fault, causation, insurance, J.M.B.'s status, and the Debtors' relationship to the business.

**C. The Automatic Stay Issue Does Not Defeat Jurisdiction; It Requires Procedural Control by This Court.**

The Court's most significant concern is whether the Third-Party Complaint against the Debtors is stayed by 11 U.S.C. § 362(a). Adkins respectfully submits that the automatic stay issue should be separated from the subject-matter jurisdiction issue. A stayed claim may still fall within this Court's subject-matter jurisdiction; the stay regulates whether and how the claim may proceed.

Section 362(a)(1) generally stays the commencement or continuation of a judicial proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case. Section 362(a)(3) also stays acts to obtain possession of or exercise control over property of the estate. To the extent the Third-Party Complaint seeks affirmative prepetition monetary relief against Tron Cody Barrett and Lakesha Mitchell Barrett individually, Adkins acknowledges that the pleading implicates § 362(a)(1). To the extent any alter-ego, veil-piercing, or fraudulent-transfer theory seeks recovery of value or control over

6

rights that may belong to the estate, the pleading may also implicate § 362(a)(3) and estate-standing principles.

That recognition does not require remand. It supports retention of jurisdiction. The automatic stay is administered by this Court, and this Court is the proper forum to determine whether the Third-Party Complaint should proceed as filed, be stayed, be converted into the proper bankruptcy procedure, or proceed only after limited stay relief. The Court can protect the Debtors and the estate without surrendering jurisdiction over the related dispute.

**D. Fraud, False Pretenses, Alter Ego, Veil Piercing, and Fraudulent Transfer Theories Strengthen the Bankruptcy Nexus, But They Do Not Automatically Avoid the Stay.**

Adkins does not contend that fraud allegations alone eliminate the automatic stay. Fraud, false pretenses, and intentional misrepresentation allegations may support nondischargeability, claim allowance, sanctions, and relief from stay, but they do not by themselves authorize prosecution of a prepetition money claim against Chapter 13 debtors outside the bankruptcy process. The better characterization is that the fraud allegations create core bankruptcy issues and justify this Court's retention and procedural management of the dispute.

The same is true for alter-ego and veil-piercing theories. They may supply the factual basis for imposing liability on the Debtors, but if asserted as affirmative claims against the Debtors they implicate § 362(a)(1). If asserted as generalized creditor theories seeking to recover value for all creditors, they may also constitute estate property or estate-controlled claims. The Fourth Circuit held in Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132 (4th Cir. 1988), that an alter-ego claim under Virginia law may be property of the bankruptcy estate controlled by the trustee. Although the posture here is not identical because J.M.B. is not the debtor and the

Debtors are individuals, Steyr-Daimler-Puch confirms that alter-ego claims in Virginia bankruptcy cases require careful estate-property and standing analysis.

Fraudulent-transfer allegations require similar caution. If Adkins seeks to avoid transfers or recover value for the benefit of the estate generally, the trustee, debtor-in-possession, or party with derivative standing may be the proper plaintiff. If, however, Adkins asserts particularized direct fraud injuries based on representations made specifically to him, those claims may belong to Adkins personally. The distinction between direct creditor claims and estate-owned claims further supports retention by this Court so that standing, stay relief, and claims treatment can be resolved in one forum.

**E. A.H. Robins and EDVA Authority Support Bankruptcy-Court Control of Intertwined Debtor and Non-Debtor Litigation.**

The Fourth Circuit's decision in A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir. 1986), is important for two reasons. First, it confirms that the automatic stay generally protects the debtor, not every non-debtor defendant. Second, it recognizes "unusual circumstances" where proceedings against non-debtors may be stayed or controlled because there is such identity between the debtor and the third party that a judgment against the third party is effectively a judgment or finding against the debtor, including indemnity situations.

The EDVA bankruptcy decision in In re Kanawha Trace Development Partners, 87 B.R. 892 (Bankr. E.D. Va. 1988), applied A.H. Robins in a related guarantor/third-party context and recognized that litigation against a non-debtor may have to be controlled where its practical effect is to bind or burden the debtor or estate. That principle supports retention here. Adjudicating Progressive's claim, Adkins' cross-claim, and the Debtor-related theories in

8

disconnected forums risks inconsistent findings and may affect the Debtors' liabilities and plan administration.

Recent EDVA authority also recognizes that alter-ego or similar estate-affecting claims may be property of the estate and may require bankruptcy-court control. See Barber DME Supply Group, LLC v. Barber, Adv. Pro. No. 25-01036-BFK, Doc. 62 (Bankr. E.D. Va. Nov. 7, 2025) (discussing alter-ego action as property of the estate and citing Steyr-Daimler-Puch and Fourth Circuit authority). This authority does not eliminate the stay issue; it shows why the issue belongs in bankruptcy court.

**F. The Court May Treat the Third-Party Complaint as a Claims-Process or Dischargeability Pleading, or Grant Limited Stay Relief for Liquidation Purposes Only.**

The Court correctly observed that the subject of the Third-Party Complaint may be capable of resolution through an ordinary proof-of-claim and objection proceeding in the Debtors' main bankruptcy case. Adkins does not oppose procedural conformity. Adkins asks that, rather than remanding the adversary proceeding wholesale, the Court enter an order preserving the bankruptcy issues and directing the proper procedure.

The Court has several available options. It may treat the Third-Party Complaint as an informal proof of claim or supplement to Adkins' filed proof of claim, subject to amendment and objection. It may require Adkins to file an amended proof of claim and/or claim-objection response in the main case. It may require Adkins to file a separate adversary complaint limited to dischargeability issues, if procedurally required. It may grant limited relief from the automatic stay under § 362(d)(1) for liquidation of liability and damages only, with enforcement against the Debtors or estate property limited to the Chapter 13 claims process. Or it may stay prosecution against the Debtors while retaining the non-debtor components to avoid inconsistent rulings.

This approach gives effect to § 362(a), protects the Debtors and the estate, and preserves the Court's ability to adjudicate or coordinate the bankruptcy issues that arise from the same nucleus of facts.

**G. If Any Component Is Non-Core, the Bankruptcy Court May Still Hear It Subject to 28 U.S.C. § 157(c).**

A non-core classification does not eliminate jurisdiction. If the Court determines that Progressive's subrogation claim or Adkins' cross-claim is non-core but related to the bankruptcy case, the Court may still hear the matter and submit proposed findings and conclusions to the District Court absent consent, or enter final orders with consent. 28 U.S.C. § 157(c). Adkins has consented to entry of final orders by the Bankruptcy Court. If another party does not consent, the Court may retain the proceeding and manage it within the statutory framework.

**H. Equitable Remand Is Not Warranted at This Stage.**

Even where related-to jurisdiction exists, 28 U.S.C. § 1452(b) permits equitable remand. Equitable remand is not warranted at this stage because the bankruptcy issues are substantial and immediate. The facts concerning J.M.B.'s status, the Debtors' alleged control of J.M.B., alleged lack of insurance, alleged fraud, Adkins' asserted claim, plan treatment, and dischargeability are intertwined. Remand would likely create duplicative litigation and risk inconsistent findings.

Retaining the proceeding does not require immediate entry of a money judgment against the Debtors or collection from estate property. The Court may preserve the stay while allowing liquidation, claims administration, or dischargeability procedure to proceed under Bankruptcy Court supervision.

## IV. CONCLUSION

For the foregoing reasons, Adkins respectfully requests that the Court find that it has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 1452; decline to remand the Subrogation Action and Cross-Claim at this stage; determine that the proceeding is at minimum related to the Debtors' Chapter 13 case; retain all core bankruptcy issues concerning claim allowance, plan treatment, dischargeability, and estate administration; and, to the extent the Court concludes that the Third-Party Complaint implicates the automatic stay, enter an order permitting amendment, procedural conformity, limited stay relief, or stay-controlled liquidation rather than remanding the proceeding wholesale.

Dated: June 25, 2026

Respectfully Submitted,

Thomas Tyree Adkins, Jr.

/s/ Brett Alexander Zwerdling
Counsel for the Removing Party
Defendant / Cross-Claim
and Third-Party Plaintiff

Brett Alexander Zwerdling, VBN 39569
Brett Alexander Zwerdling, PLLC
1702 Treboy Ave
Richmond, VA 23226
(804) 564-4593 Fax (804) 355-1597
brett@icansleepatnight.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2026 a copy of the foregoing was mailed by first class

U.S. mail and/or electronically served via CM/ECF upon the U.S. Trustee, the Chapter 13

Trustee, Debtors' Counsel, the Debtors, Plaintiff's counsel and all other necessary parties as

listed below.

/s/ Brett Alexander Zwerdling

| VIA CM/ECF<br>Rudolph C McCollum, Jr<br>McCollum at Law, P.C.<br>422 E Franklin St., Ste 101<br>Richmond, VA 23219-2226<br>Fax: 804-523-3901<br>Email: rudymack@aol.com<br>*Counsel for the Debtors in the Chapter 13 Bankruptcy Case only (not counsel of record in either adversary proceeding)* | FIRST CLASS U.S. MAIL<br>Tron Cody Barrett<br>9537 Kennedy Station Terr.<br>Glen Allen, VA 23060<br>*3rd Party Defendant* | FIRST CLASS U.S. MAIL<br>Lakesha Mitchell Barrett<br>9537 Kennedy Station Terr.<br>Glen Allen, VA 23060<br>*3rd Party Defendant* |
|---|---|---|
| VIA CM/ECF<br>Suzanne E. Wade, Chapter 13 Trustee<br>7202 Glen Forest Dr.<br>Suite 202<br>Richmond, VA 23226 | FIRST CLASS U.S. MAIL<br>J.M.B. Trucking LLC (inactive)<br>c/o Lakesha Mitchell Barrett, Registered Agent<br>9537 Kennedy Station Terr<br>Glen Allen, VA 23060<br>*Defendant* | FIRST CLASS U.S. MAIL<br>Progressive Universal Insurance Co<br>Subrogee of Steven Bowles<br>c/o Sharon N. Horner, Esquire<br>Sharon N. Horner & Associates, PLC<br>6804 Patterson Ave., Suite A<br>Richmond, VA 23226<br>Email: sharon@snhornerlaw.com<br>*Counsel for the Plaintiff in state court only (not counsel of record in either adversary proceeding)* |
| VIA CM/ECF<br>Office of the US Trustee<br>Region 4 -R<br>701 E. Broad Street, Ste. 4304<br>Richmond, VA 23219 | | |